CASSON CONSTRUCTION COMPANY,
INC., Plaintiff,

v.

ARMCO STEEL CORPORATION, et
al., Defendants.

Civ. A. No. 77–2258.

United States District Court,
D. Kansas.

May 7, 1980.

Donald D. Barry of Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan., Robert C. Gordon of Anderson, Granger, Nagels, Lastelic & Gordon, Kansas City, Mo., Kenton C. Granger of Anderson, Granger, Nagels, Lastelic & Gordon, Overland Park, Kan., for plaintiff.

Jan Eric Cartwright, Atty. Gen., and John F. Fischer, II, Asst. Atty. Gen., Oklahoma City, Okl., for class member Dept. of Corrections of the State of Oklahoma.

Stanley B. Edelstein of Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for class member McCloskey & Co., Inc.

Ernest H. Fremont, Jr. and Wm. Dirk Vandever, Kansas City, Mo., for class member V. S. DiCarlo General Contractors Inc.

Joseph H. McDowell of McDowell, Rice & Smith, Kansas City, Kan., W. M. Stapleton of Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., David S. Patterson and Charles Kadish of Breed,

Abbott & Morgan, New York City, for defendant Armco Steel. Corp.

John K. Dear of Dear, Yarnevich & Carey, Kansas City, Kan., Wayne H. Hoecker and George P. Coughlin of Gage & Tucker, Kansas City, Mo., for defendants The Carter Waters Corp. and Richard F. Newlin.

Wesley G. Hall, Rodney D. Joslin and Nicole Finitzo of Jenner & Block, Chicago, Ill., Milton C. Clarke of Swanson, Midgley, Gangwere, Thurlo & Clarke, Kansas City, Mo., Robert D. Benham of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant The Ceco Corp.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

This antitrust case was filed October 13, 1977. On October 19, 1977, each defendant was served with an identical set of ninety-two interrogatories. Local Rule 17(d) provides that no party shall serve more than thirty interrogatories without leave of court. No leave was sought. It is, however, common knowledge that more than thirty interrogatories ordinarily will be permitted in complicated cases such as this.

On November 4, 1977, at plaintiff's request, defendants were enjoined from destroying documents relevant to the litigation. Defendants objected to the order as unnecessary and overly broad. At a hearing before the Magistrate on November 28, 1977, defendants proposed a different order and plaintiffs did not object. That order was entered by the Magistrate and restrained all parties from destroying documents. Defendants were given leave to file a motion requesting a stay of discovery because of a criminal action pending against them in the Western District of Missouri. No mention was made that more than thirty interrogatories had been served. All discovery was stayed pending resolution of the motion.

On January 25, 1978, a hearing was held before the Magistrate. A proposed pretrial order on discovery was to be submitted to the Magistrate in thirty days. Again no mention was made of the fact that more than thirty interrogatories had been served.

On March 7, 1978, a conference was held with the Magistrate. While there was a good deal of discussion on discovery, again no complaint was made about the number of interrogatories. Thereupon the Magistrate entered Pretrial Order No. 1 on March 24, 1978. A discovery schedule had been agreed upon by all counsel. A target date for completion of class action discovery was set at June 1, 1978. A target date for completion of all discovery was set at October 1, 1978. Paragraph 4 of the Order stated in pertinent part:

> Defendants need not respond to Plaintiff's First Set of Interrogatories to Corporate Defendants at this time. Plaintiffs may designate ... particular interrogatories, and defendants shall respond thereto within thirty days or April 14, 1978, whichever is later.

On March 10, 1978, pursuant to the agreement between counsel that had been discussed at the March 7 conference and embodied in the March 24 Order, plaintiff's counsel notified counsel for defendants that certain interrogatories to the corporate defendants had been eliminated and that responses to the remaining interrogatories (the designated particular interrogatories) should be made.

On April 17, 1978, Ceco filed its response which consisted of an objection on the basis of Local Rule 17(d)—that more than thirty interrogatories had been served. The objection stated: "This defendant reserves any or all objections it may have under Rule 33(a), Federal Rules of Civil Procedure."

On April 19, 1978, Armco presented a similar response based on Local Rule 17(d), "fully reserving its rights to object or otherwise respond at a future date to these and any other interrogatories that may be properly served upon it."

On May 26, 1978, plaintiff filed a Motion to Compel Answers to Interrogatories. Plaintiff argued that at the January 25, 1978 conference, and in the pretrial order entered on March 24, 1978, which was approved by all corporate defendants, defendants had waived any Local Rule 17(d) objection.

Defendants filed a joint memorandum in opposition arguing that they had not waived such objection.

In supplementary suggestions in support of the motion to compel, plaintiff argued that in addition to elimination of the local rule objection by waiver, plaintiff had effectively complied with Local Rule 17(d) in that the Pretrial Order No. 1 granted it permission to propound all interrogatories by designating particular interrogatories with no mention of paring the number down to thirty.

On September 26, 1978, the Magistrate entered a memorandum and order sustaining plaintiff's motion to compel. The magistrate found that defendants, in agreeing to paragraph 4 of Pretrial Order No. 1, waived the thirty-interrogatory limitations of Local Rule 17(d):

> "Under the Court's Order (Pretrial Order No. 1) the defendants were given to April 14, 1978 to respond to plaintiffs' interrogatories. Having responded with a single, blanket objection, found to have been waived by defendants, answers to the interrogatories are now in order. As a general rule, a party must answer or object to interrogatories within the time provided by the rule as fixed by the Court."

█ Local Rule 17(d) is an attempt to avoid burdensome interrogatories. The proper response from a party faced with burdensome interrogatories is a motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c). Defendants in this case made no request for a protective order. Rather they entered into negotiations with plaintiff, which resulted in Pretrial Order No. 1 and then, contrary to the spirit of the negotiations and the order itself, responded to the served interrogatories with a single objection based on the local rule. Under the circumstances, this approach to discovery could be construed as an indicator of defendants' game plan for the discovery process that lay ahead.

Defendants' attempt to preserve all other objections was of no effect. There is no

provision in the Federal Rules for preserving objections. "Rule 33 requires that the particular interrogatory be fully answered by the party or that objection to it and the grounds of objection be stated. A unilateral declaration that no objections are waived will not be allowed to displace the command of Rule 33 that the party either fully answer or object." *Dollar v. Long Mfg., N. C. Inc.*, 561 F.2d 613, 617 (5th Cir. 1977). Having failed to answer or make specific legitimate objections to particular interrogatories within the time allowed, defendants were held to have waived objections to all the interrogatories. The Magistrate compelled them to answer the interrogatories on or before November 1, 1978.

On October 6, 1978, the corporate defendants filed a "Joint Memorandum in Support of Motion for Review of Order Compelling Answer to Interrogatories." It does not appear that any motion for review was actually filed. Defendants' memorandum challenged only that part of the Magistrate's Order that held that there was a waiver of "substantive" objections. Attached to the memorandum were "Proposed Objections" by Ceco and "Preliminary Objections" by Armco to the first set of interrogatories. These had been received by plaintiff on October 4, 1978. These documents contained no answers to any interrogatories, but stated objections to most of the proposed interrogatories. Defendants did not seek an order staying the Magistrate's order pending review.

On November 4, 1978, plaintiff received two documents: "Answers and Objections of Defendant The Ceco Corporation to Plaintiff's First Set of Interrogatories to Corporate Defendants" and "Defendant Armco Inc.'s Response (Answers and Objections) to Plaintiff Casson Construction Company, Inc.'s First Set of Interrogatories to the Corporate Defendants." On November 10, 1978, Ceco served on plaintiff an "Amendment to Answers and Objections of Defendant Ceco Corporation to Plaintiff's First Set of Interrogatories to Corporate Defendants." This amendment involved only Interrogatory No. 81.

On November 21, 1978, this court sustained the Magistrate's order compelling answers to interrogatories. We were and are in full agreement with the Magistrate's conclusion that these defendants had waived any objection based on Local Rule 17(d). The responses consisting of Rule 17 objections were a nullity and did not effectively preserve a right to make further "substantive" objections after the due date for responses had passed. We cited the general rule "that, in the absence of an extension of time, failure to object within the time fixed is a waiver of *any* objection. *See* Wright and Miller, Federal Practice and Procedure § 2173 (1970 and 1978 Supp.) and cases cited therein."

Defendants apparently chose to ignore our order as they had ignored the Magistrate's earlier order. At the hearing before the Magistrate on September 6, 1978, after the Magistrate ordered defendants to *answer* the propounded interrogatories, we are informed by plaintiff's brief that counsel for defendant Armco was verbally obstinate. Plaintiff has asserted and it has not been controverted that Armco's lawyer informed the Magistrate and counsel for plaintiff that defendants would answer the interrogatories "only over my dead body." This would appear to be the approach that defendants intended to pursue. They served no answers to the many interrogatories to which objections had been made. After waiting more than thirty days, on December 27, 1978, plaintiff filed a motion for sanctions against Ceco and Armco under Federal Rule of Civil Procedure 37(b)(2), and requested judgment by default on the issue of liability as is provided in (C) of the Rule.

On January 19, 1979, plaintiff received a "Supplemental Response" from Ceco and a "First Set of Supplemental and Revised Responses" from Armco. The documents stated that objections were not waived and claims of privilege and objections were preserved. On February 5, 1979, Armco presented plaintiff with a "Second Set of Supplemental and Revised Responses" again purporting to preserve claims of privilege.

At a hearing on January 22, 1979, we referred the motion for sanctions to the Magistrate and asked him to submit suggested findings and recommendations. The Magistrate submitted findings and recommendations to this court and defendants filed additional briefs. Oral argument was heard on April 10, 1980. At that time some fifteen interrogatories were still in issue. In some cases the responses were objections; in other cases they were denominated "answers" but were merely disguised objections. These interrogatories are attached as Exhibit A to this order. The responses, in chart form according to the date submitted, are attached as Exhibit B. In response to a number of interrogatories defendants had invoked the option to produce business records. We are in complete agreement with the Magistrate's findings, but we believe his recommendation that defendants be given one more chance to answer the interrogatories, except for the interrogatory dealing with grand jury matters which would be considered further by the Magistrate in accordance with *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), was too generous in the circumstances of this case. In our opinion, the ultimate sanction of judgment by default is warranted.

■ In general, the discovery rules are to be accorded a "broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). As Mr. Justice Douglas stated in *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), "[m]odern instruments of discovery serve a useful purpose.... They together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic facts and issues disclosed to the fullest practicable extent." If discovery is to be effective in light of its purposes, it must be conducted in good faith. To this end Rule 37 provides for sanctions against a party "who seeks to evade or thwart full and candid discovery." Wright & Miller, *supra*, § 2281 at 753. The history of events relating to plaintiff's interrogatories plainly demonstrates that defendants Ceco and Armco have sought to obstruct and thwart discovery; their conduct scarcely bears on any semblance of good faith.

■ When a determination is made that sanctions are warranted, a court must consider the asserted reasons for a party's failing to comply with the rules of discovery and court orders pertaining thereto. *See, Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir. 1978). In this case, Ceco and Armco have attempted to excuse their obstructionist conduct on the ground that their objections to interrogatories were meritorious and their responses justified.

As we indicated above, we are in accord with the Magistrate's findings that with one exception the asserted objections were without merit. We believe it is appropriate to consider some examples of defendants' responses to certain interrogatories as illustrative of their evasive tactics. Interrogatory No. 35 stated as follows:

Identify each of your officers or employees who, to your knowledge (including knowledge obtained in connection with any investigation or proposed proceeding by the United States Department of Justice, a federal grand jury, the Federal Trade Commission or state investigation proceedings) was present at any meeting with competitors at which there was a discussion of prices or pricing or re-bar materials, including, but not limited to, allocation of markets, allocation of customers, delivered price, f. o. b. pricing, and basing point systems, and give the following separately as to each such occasion:

(a) the identity of your officer or employee who was present;

(b) when it took place;

(c) the identity of the person or persons who initiated, called or organized the meeting;

(d) where it took place;

(e) the identity of the other individuals who participated;

(f) the product or products (specifying type, grade and line) to which each such discussion or meeting related;

(g) the substance of the discussion or meeting;

(h) every action taken by you, your employees or officers or on your behalf as a result of the discussion or meeting.

Armco's response was served on November 4, 1978, in a document described as "Objections and Answers," and stated:

Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

Identical responses were made to Interrogatories 36, 37, 38, 39, 41, 44, and 46.

Ceco's initial response to Interrogatory 35, on October 10, 1978, was an objection made on the following grounds:

(1) The interrogatory inquiries into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege;

(2) The interrogatory seeks information regarding mental impressions or opinions of Ceco's attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege;

(3) The interrogatory impermissibly calls for conclusions of fact and law and seeks responses which would require Ceco to form opinions and make judgments which invade the province of the court and jury.

Ceco's answers and objections of November 4, 1978, repeated these grounds. Ceco's supplemental response of January 19, 1979, referred to its "answer" to Interrogatory No. 34, which stated:

For its answer to Interrogatory No. 34, Ceco asserts the attorney-client privilege. Ceco further states that the information sought by this Interrogatory cannot be provided without violating the privilege of certain individuals against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States, which privilege these individuals are not willing to waive.

■■■ Rule 33(a) provides that where interrogatories are directed at a corporation, the corporation must designate someone to answer on its behalf with "such information as is available to the *party*." (Emphasis added.) Knowledge of officers and agents "is imputed to the corporation itself." *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210 (8th Cir. 1973). In an extreme case, "where no corporate agent can answer the propounded interrogatories without being subject to a 'real and appreciable risk' of self-incrimination," a protective order may be issued pursuant to Rule 26(c). *Id.* No protective order was sought here.

In *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 417 (N.D.Ill.1977), plaintiffs filed a motion to compel answers to interrogatories, not unlike the interrogatories in this case. In opposition to the motion, defendants argued that the interrogatories were outside the scope previously delineated by the court, answering them would place an undue burden on the defendants to interview innumerable witnesses, and depositions of "present and past employees already identified" would be "the more appropriate way to obtain the requested information so that the Fifth Amendment privilege can be raised and a record made in orderly fashion." *Id.* at 418. The court's rationale for granting the motion to compel, especially as it relates to an asserted Fifth Amendment problem, is pertinent here:

It should first be noted that the interrogatories are classic first-wave discovery. They seek information as to the identity of events and the individuals participating in them which is necessary as a prelude to second-wave depositions of the

identified individuals. They are clearly within the scope of first-wave discovery previously delineated by the court.

Nor are they unduly burdensome. The more events and the more individuals involved, of course, the more burdensome answering the interrogatories will be. It can hardly be seriously contended, however, that the volume of possibly illegal activity at some point becomes so great as to make its disclosure unreasonably burdensome. The degree of burden will depend on the extent of the various defendants' activities and not on the interrogatories.

Defendants further urge that the interrogatories should not be answered but plaintiffs should be required to obtain the requested information through depositions so that individual deponents can, as they already have, refuse to answer the questions or give the requested information on Fifth Amendment grounds. The speciousness of this contention is obvious. Defendants are well aware, and do not contend to the contrary, that no Fifth Amendment privilege is available to the corporate defendants to whom the interrogatories are directed. *See United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Campbell Painting Corp. v. Reid*, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). Accordingly, the information sought by the interrogatories may not be withheld on grounds of corporate privilege against self-incrimination.

Defense counsel urge, however, that they face a conflict between representing the corporate defendants and their "duty to keep employees informed of their right to refuse to answer." The short answer to that contention is that corporate counsel should not represent individual employees if there is any conflict, as innumerable cases have held.

Finally, they suggest without stating unequivocally, that there may be difficulty in finding officers or employees who can sign the answers to the interrogatories without incriminating themselves.

Alternatively, they assert that any person who could sign would not have personal knowledge of the facts.

As plaintiffs point out in their brief, the Federal Rules of Civil Procedure do not contemplate that the corporate officer or employee responding to the interrogatories have first-hand personal knowledge of all the facts reflected in the answers. This would obviously be impossible in most corporations since no one officer or employee has first-hand personal knowledge of what all the other officers and employees do in the day-to-day conduct of a corporation's business. The rules require that the corporation select an officer or employee to gather and obtain from books, records, other officers or employees, or other sources, the information necessary to answer the interrogatories and sign them on behalf of the corporation not himself. *See United States v. 42 Jars, Etc.*, 162 F.Supp. 944 (D.N.J. 1958), *aff'd*, 264 F.2d 666 (3d Cir. 1959).

A corporate officer or employee, like any other individual, has no privilege against some other person producing incriminating evidence against him. The privilege is against compulsory self-incrimination only. Defendants' contention would result in corporations and corporate directors, officers and employees having a privilege against discovery of incriminating evidence against them available to no other persons.

It is particularly specious for defendants to urge that plaintiffs should seek to obtain the information through depositions when they are well aware that many of the deponents have in the past and will in the future, at least initially, refuse to answer the questions. In all fairness, they virtually concede that plaintiffs will not secure the sought for information at depositions and that the objective of their contentions really is to prevent disclosure of what is clearly relevant information.

*Id.* at 419–20.

We believe that defendants' responses asserting an inability to answer because of

Fifth Amendment refusals to cooperate are nothing more than bad faith attempts by the corporations to evade their responsibility to permit discovery in a most critical area.

Interrogatory No. 32 stated as follows:

(a) State whether your company or any person or persons acting on its behalf, including counsel, made any investigation regarding any possible violations of any company policy identified in the answer to interrogatory No. 31, the Sherman Act, or Section 5 of the Federal Trade Commission Act concerning the matters referred to in interrogatory No. 31 by any officer or employee or former officer or employee with regard to re-bar materials.

(b) If the answer to sub-paragraph (a) is affirmative:

i. identify each person who was interviewed in connection with any such investigation;

ii. state the date and place of each such interview, and identify each person who was present;

iii. identify each document in which such interview is recorded;

iv. identify each person who was discharged, disciplined in any manner, or reprimanded for what was believed to be or found to be such a violation.

In its objections and answers of November 4, 1978, Armco responded to Interrogatory No. 32 as follows:

(a) There was no investigation other than that conducted by Armco's counsel in preparation for litigation.

(b) (i)–(iii) *Note* General Objection No. 4.

4. Armco objects to the interrogatories to the extent that they seek information (including but not limited to communications between Armco and its attorneys who have represented or are representing other defendants, material prepared in anticipation of litigation or for trial or the mental impressions of its attorneys) which is legally protected by applicable rules, privileges, doctrines and principles, including but not limited to the attorney-client privilege and the attorney work-product doctrine.

(iv) None.

Ceco's response to this interrogatory of October 10, 1978, stated:

*Objection:*

Ceco objects to Interrogatory No. 32(b) on the ground that it inquires into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege; it seeks a detailed pattern of investigation and exploration, which is not a proper subject for discovery; and it seeks information regarding the mental impressions of its attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege.

Ceco's response of November 4, 1978, was only slightly modified:

*Answer and Objection:*

(a) Ceco itself made no such investigation. Any such investigation which was conducted, was conducted by counsel for Ceco.

(b) Ceco objects to Interrogatory No. 32(b) on the ground that it inquires into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege; it seeks a detailed pattern of investigation and exploration, which is not a proper subject for discovery; and it seeks information regarding the mental impressions of its attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege.

On January 19, 1979, Ceco interposed the following response:

(b) For its answer to subpart (b) of Interrogatory No. 32, Ceco asserts the attorney-client privilege. Ceco further states that subpart (b) of Interrogatory No. 32 seeks information covered by the work product doctrine, which is discoverable only in accordance with the provisions of Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provisions have not been satisfied here, and that it seeks a

detailed pattern of investigation and exploration, which is not a proper subject for discovery under Federal Rule 26. Furthermore, the information sought by this Interrogatory cannot be provided without violating the privilege of certain individuals against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States, which privilege these individuals are not willing to waive.

■ As the Magistrate noted, the attorney-client privilege, as asserted by defendants in these responses, is to be strictly construed. *See, e. g. In re Horowitz*, 482 F.2d 72 (2d Cir. 1973), *cert. denied* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The privilege applies only when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 32 (D.Md.1974).

■ The fact that the privilege requires the existence of a client on whose behalf the privilege may be asserted presents certain problems when discovery is sought from a corporation, since a corporation can communicate to its attorneys only through its officers, agents and employees. The most widely used test to determine whether an employee is a client for purposes of the privilege is the *control group test* which "requires that the communicant be in a position to control or take a substantial part in a decision about any action to be taken upon the advice of the lawyer, or that the communicant be a member of a group having such authority." *Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 400 (E.D.Va.1975). This is the test used in the Tenth Circuit. *See Natta v. Hogan*, 392 F.2d 686, 692 (10th Cir. 1968); *W. R. Grace & Co. v. Pullman, Inc.*, 446 F.Supp. 771, 776 (W.D.Okla.1976); *Livingston v. Owens-Corning Fiberglass*, No. 79–4094 (D.Kan., October 22, 1979, *unpublished*).

■ As the court in *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977) noted, the "burden of establishing the existence of the attorney-client privilege, and of presenting the underlying facts demonstrating the existence of the privilege rests on the claimant of the privilege." *See also International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88 (D.Del.1974). Defendants Armco and Ceco have made no effort to establish any of the elements of the attorney-client privilege. Furthermore, while communications may be privileged, facts are not, and the interrogatories cited above and others to which similar responses were interposed seek facts. The passage from *City of Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa. 1962) quoted by the Magistrate in his findings and recommendations, bears repeating here:

> The point which the defendants appear to have missed is that the protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

The defendants' bald assertions of the attorney-client privilege are nothing more than deliberate attempts to delay and obstruct discovery.

■ Insofar as defendants rely on the work-product privilege, the responses are also defective. The Supreme Court in *Hick-*

*man, supra* 329 U.S. at 504, 67 S.Ct. at 390, noted that there is a distinction between documents that a party has assembled and the facts that he has learned from those documents. "The courts have consistently held that the work-product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." Wright & Miller, *supra*, § 2023 at 194. Although the discovering party has the burden of showing substantial need for work-product materials under Rule 26(b)(3), the party asserting that privilege has the burden of showing that the materials are in fact protected. These defendants have not even attempted to make such a showing.

As a final example of defendants' persistent and deliberate tactical intransigence and perhaps what might be regarded as the proverbial "last straw," we note Armco's response to Interrogatory No. 92:

> *INTERROGATORY NO. 92.* Identify each of your officers or managing agents who participated in the preparation of the foregoing answers to these interrogatories.
>
> *FIRST REVISED RESPONSE TO INTERROGATORY NO. 92.* The term "managing agent" is vague and ambiguous, but the answer would appear to be none.

As we indicated above, the Magistrate found that with one exception the asserted objections to the interrogatories were without merit. The exception concerned material relating to the grand jury indictment against defendants in the Western District of Missouri. The fact that one objection, of all those raised, was substantial, does not excuse defendants' misconduct.

In sum, we find that the excuses of defendants for their failure to answer interrogatories when ordered to do so by the Magistrate and this court were merely bad faith efforts to avoid revealing relevant, discoverable information, thus warranting the ultimate sanction of judgment by default on the issue of liability.

We fully realize that default is the harshest of sanctions, *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977), *cert. denied* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978), and ordinarily would not be invoked for an isolated incident of discovery misconduct. We believe, however, that defendants' conduct, when viewed in its totality in this case, represents the kind of "flagrant bad faith" and "callous disregard" of a party's obligations under the discovery rules. The extreme sanction is justified, not simply for the purpose of preventing prejudice to the discovering party, but as a necessary deterrent to others. *National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1967). We are mindful of the fact that our discretion is not unlimited. This case, however, falls short of one in which sanctions are being sought merely because of technical deficiencies. *See Glezos v. Blackett*, No. 76–2125 (10th Cir., April 25, 1977). These defendants have persisted in gamesmanship over a period of some two years and repeatedly failed to heed the orders of the Magistrate and this court. The game must now come to an end.

IT IS THEREFORE ORDERED that plaintiff's motion for judgment by default against defendants Ceco and Armco pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) be and hereby is sustained.

## APPENDIX

### EXHIBIT A

*INTERROGATORY NO. 32:*

(a) State whether your company or any person or persons acting on its behalf, including counsel, made any investigation regarding any possible violations of any company policy identified in the answer to Interrogatory No. 31, the Sherman Act, or Section 5 of the Federal Trade Commission Act concerning the matters referred to in Interrogatory No. 31 by any officer or employee or former officer or employee with regard to re-bar materials.

(b) If the answer to sub-paragraph (a) is affirmative:

    i.  identify each person who was interviewed in connection with any such investigation;

    ii.  state the date and place of each such interview, and identify each person who was present;

    iii.  identify each document in which such interview is recorded;

    iv.  identify each person who was discharged, disciplined in any manner, or reprimanded for what was believed to be or found to be such a violation.

*INTERROGATORY NO. 33:*

(a) State whether any of your officers or employees admitted to you that they violated any company policy identified in the answer to Interrogatory No. 31 or the Sherman Act concerning the matters referred to in Interrogatory No. 31 with regard to re-bar materials.

(b) If the answer to sub-paragraph (a) is affirmative:

    i.  identify each officer or employee who made such an admission, including a description of the duties and responsibilities he had with regard to re-bar materials;

    ii.  state the date of each such admission;

    iii.  identify each document constituting, reflecting, referring or relating to each such admission.

*INTERROGATORY NO. 34:*

State the time when and the manner in which your chief executives and/or any member of your Board of Directors first discovered that any of the officers or employees of your company had engaged or were charged with having been engaged in practices which were in violation of any company policy identified in the answer to Interrogatory No. 31 or the Sherman Act concerning the matters referred to in Interrogatory No. 31 with respect to re-bar materials.

*INTERROGATORY NO. 35:*

Identify each of your officers or employees who, to your knowledge (including knowledge obtained in connection with any investigation or proposed proceeding by the United States Department of Justice, a federal grand jury, the Federal Trade Commission or state investigation proceedings) was present at any meeting with competitors at which there was a discussion of prices or pricing or re-bar materials, including, but not limited to, allocation of markets, allocation of customers, delivered price, f. o. b. pricing, and basing point systems, and give the following separately as to each such occasion:

(a) the identity of your officer or employee who was present;

(b) when it took place;

(c) the identity of the person or persons who initiated, called or organized the meeting;

(d) where it took place;

(e) the identity of the other individuals who participated;

(f) the product or products (specifying type, grade and line) to which each such discussion or meeting related;

(g) the substance of the discussion or meeting;

(h) every action taken by you, your employees or officers or on your behalf as a result of the discussion or meeting.

*INTERROGATORY NO. 36:*

Give the same information requested in Interrogatory No. 35 with respect to each discussion of terms and conditions of sale instead of prices or pricing.

*INTERROGATORY NO. 37:*

Give the same information requested in Interrogatory No. 35 with respect to each discussion regarding or relating to estimated weights as a basis for quoting and/or computing delivered prices.

*INTERROGATORY NO. 38:*

With respect to each separate occasion referred to in Interrogatories Nos. 35 to 37, identify every document recording or referring to what occurred, specifically stating which document relates to which occasion.

*INTERROGATORY NO. 39:*

If you know of the occurrence of any meetings or discussions whether or not attended by you, such as are referred to in Interrogatories Nos. 35 to 37, but cannot give, either in whole or in part, the specific information called for by these Interrogatories to the extent requested, give the best information which you have on the subject, including the best approximation of dates.

*INTERROGATORY NO. 41:*

Identify each person who to your knowledge or information (including knowledge or information obtained as a result of any investigation or proceedings by a federal grand jury, the Federal Trade Commission or other federal or state investigative proceedings) following each or any occasion referred to in Interrogatories Nos. 35 to 37, and No. 39, communicated with any other person not present at the discussion itself with respect to such discussion or any part hereof.

As to each such communication, state the following:

(a) the identity of each person involved;

(b) the time or best approximation you can make of the time of the communication;

(c) the place or places of communication;

(d) the medium of communication, such as, *e. g.*, personal discussion, telephone, correspondence;

(e) the subject matter of the communication;

(f) the substance of the communication;

(g) the identity of each document recording or referring to each such communication, specifically stating which document relates to which communication.

*INTERROGATORY NO. 42:*

Identify each person who to your knowledge or information (including knowledge or information obtained as a result of any investigation or proceeding by a federal grand jury, the Federal Trade Commission or other federal or state investigative proceedings) checked by telephone or otherwise with any defendant or any other manufacturer, seller, distributor, or dealer concerning increased prices of re-bar materials, in-

cluding, but not limited to, allocation of markets, allocation of customers, delivered prices, f. o. b. prices and freight charges and/or estimated weights as a basis for quoting delivered prices, identifying separately with respect to each such communication:

(a) the persons involved;

(b) the time, or best approximation you can make of the time of the communication;

(c) the medium of communication, such as, *e. g.*, telephone, correspondence;

(d) the subject matter of the communication;

(e) the substance of the communication;

(f) the identity of each document recording or referring to each such communication, specifically stating which document relates to which communication.

*INTERROGATORY NO. 43:*

Give the same information requested in Interrogatory No. 42 for communications concerning reported deviations from agreed-upon maximum discounts and published prices of re-bar materials, including, but not limited to, delivered prices, f.o.b. prices and freight charges and/or estimated weights as a basis for quoting delivered prices.

*INTERROGATORY NO. 44:*

To the extent not previously answered:

(a) State whether any of your officers or employees attended any meeting also attended by any officers or employee of any other defendant at which there was any discussion, formal or informal, relating to published prices, order prices, delivered prices, f.o.b. prices, phantom freight, discounts, estimated weights, lost business, future business, past transactions, allocations of business, market conditions, market activities, terms and conditions of sale, bids, negotiations, discontinuation of any type, line or grade of re-bar materials or other competitive activity with respect to re-bar materials.

(b) If the answer to sub-paragraph (a) is affirmative, identify each such officer or employee.

(c) If the answer to sub-paragraph (a) is affirmative, state separately with respect to each such meeting:

    i.  the date when it was held;

    ii.  the place where it was held;

    iii.  the identity of each person who attended;

    iv.  which of the subjects enumerated were discussed;

    v.  the substance of said discussion;

    vi.  identify each document which forms the basis in whole or in part of your answer to each sub-part of this Interrogatory.

### INTERROGATORY NO. 45:

To the extent not previously answered:

(a) State whether, apart from any meetings previously identified, any of your officers or employees communicated, whether formally or informally, with any officers or employees of any other defendant concerning published prices, order prices, delivered prices, f.o.b. prices, phantom freight, discounts, estimated weights, lost business, future business, past transactions, allocation of business, market conditions of sale, bids, negotiations, discontinuation of any type, line or grade of re-bar materials, or other competitive activity with respect to re-bar materials.

(b) If the answer to sub-paragraph (a) is affirmative, identify each such officer or employee.

(c) If the answer to sub-paragraph (a) is affirmative, state separately with respect to each such communication:

    i.  the date when it took place;

    ii.  the medium of the communication such as personal discussion, telephone, correspondence, etc.;

    iii.  the place, if any, where it took place;

    iv.  the identity of each person involved;

    v.  which of the subjects enumerated were involved in each communication; and

    vi.  the substance of the said discussion.

### INTERROGATORY NO. 46:

To the extent not previously answered:

(a) State whether any of your officers or employees entered into an understanding, agreement, plan or scheme, express or implied, formal or informal, concerning any type, grade or line of re-bar materials relating to published prices, order prices, delivered prices, f.o.b. prices, phantom freight, discounts, estimated weights, future business, terms and conditions of sale, bids, production, distribution, territories, customers, allocation of business, discontinuation of any type, line or grade of re-bar materials, or other competitive activity.

(b) If the answer to sub-paragraph (a) is affirmative, state separately as to each such understanding, agreement, plan or scheme:

    i.  the identity of each such officer or employee;

    ii.  the identity of each person with whom it was made;

    iii.  when it was entered into;

    iv.  where it was entered into;

    v.  if oral, its terms;

    vi.  if written, the identity of each document referring thereto.

### INTERROGATORY NO. 48:

Was there an investigation into the activities of your company or of the re-bar materials industry conducted by the Federal Trade Commission, the Department of Justice, Antitrust Division, or any other federal agency or federal legislative committee other than the federal grand jury investigation and indictment described above? If your answer is affirmative, then:

(a) Identify each person you know or believe gave information to any such federal agency or committee;

(b) State the date and place such information was given;

(c) Identify the person receiving such information;

(d) Identify each copy, summary, or transcript of such information which you prepared or obtained;

(e) Identify each document which you furnished, transmitted or otherwise made

·available to such federal agency or committee; and

(f) If you conducted any investigation into matters relating to such investigation by the Department of Justice, Antitrust Division or any other federal agency or committee, provide the information requested in Interrogatory No. 47(c).

## EXHIBIT B

| CECO'S PROPOSED OBJECTIONS 10-10-78 | CECO'S ANSWERS AND OBJECTIONS 11-4-78 | CECO'S SUPPLEMENTAL RESPONSE 1-19-79 |
|---|---|---|

**Interrog.**

**32**

Objection:

Ceco objects to Interrogatory No. 32(b) on the ground that it inquires into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege; it seeks a detailed pattern of investigation and exploration, which is not a proper subject for discovery; and it seeks information regarding the mental impressions of its attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege.

Answer and Objection:

(a) Ceco itself made no such investigation. Any such investigation which was conducted, was conducted by counsel for Ceco.
(b) Ceco objects to Interrogatory No. 32(b) on the ground that it inquires into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege; it seeks a detailed pattern of investigation and exploration, which is not a proper subject for discovery; and it seeks information regarding the mental impressions of its attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege.

Answer:

(b) For its answer to subpart (b) of Interrogatory No. 32, Ceco asserts the attorney-client privilege. Ceco further states that subpart (b) of Interrogatory No. 32 seeks information covered by the work product doctrine, which is discoverable only in accordance with the provisions of Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provisions have not been satisfied here, and that it seeks a detailed pattern of investigation and exploration, which is not a proper subject for discovery under Federal Rule 26. Furthermore, the information sought by this Interrogatory cannot be provided without violating the privilege of certain individuals against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States, which privilege these individuals are not willing to waive.

**33**

Objection:

Ceco objects to Interrogatory No. 33 on the following grounds:
(1) The interrogatory inquires into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege;
(2) The interrogatory seeks information regarding mental impressions or opinions of Ceco's attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege;
(3) The interrogatory impermissibly calls for conclusions of fact and law and seeks responses which would require Ceco to form opinions and make judgments which invade the province of the court and jury.

Objection:

Ceco objects to Interrogatory No. 33 on the following grounds:
(1) The interrogatory inquires into communications between Ceco and its attorneys, as to which Ceco asserts the attorney-client privilege;
(2) The interrogatory seeks information regarding mental impressions or opinions of Ceco's attorneys as well as information developed in anticipation of litigation or for trial, as to which Ceco asserts the work-product privilege;
(3) The interrogatory impermissibly calls for conclusions of fact and law and seeks responses which would require Ceco to form opinions and make judgments which invade the province of the court and jury.

Answer:

For its answer to Interrogatory No. 33, Ceco asserts the attorney-client privilege. Ceco further states that this Interrogatory seeks information covered by the work product doctrine, which is discoverable only in accordance with the provisions of Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provisions have not been satisfied here. Furthermore, the information sought by this Interrogatory cannot be provided without violating the privilege of certain individuals against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States, which privilege these individuals are not willing to waive.

**34**

Objection:

See Ceco's objection to Interrogatory No. 33.

Objection:

See Ceco's objection to Interrogatory No. 33.

Answer:

For its answer to Interrogatory No. 34, Ceco asserts the attorney-client privilege. Ceco further states that the information sought by this Interrogatory cannot be provided without violating the privilege of certain individuals against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States, which privilege these individuals are not willing to waive.

**35**

Objection:

See Ceco's objection to Interrogatory No. 33.

Objection:

See Ceco's objection to Interrogatory No. 33.

Answer:

See Ceco's answer to Interrogatory No. 34.

**36**

Objection:

See Ceco's objection to Interrogatory No. 33.

Objection:

See Ceco's objection to Interrogatory No. 33.

Answer:

See Ceco's answer to Interrogatory No. 34.

**37**

Objection:

See Ceco's objection to Interrogatory No. 33.

Objection:

See Ceco's objection to Interrogatory No. 33.

Answer:

See Ceco's answer to Interrogatory No. 34.

**38**

Objection:

See Ceco's objection to Interrogatory No. 33.

Objection:

See Ceco's objection to Interrogatory No. 33.

Answer:

See Ceco's answer to Interrogatory No. 33.

| | CECO'S PROPOSED OBJECTIONS 10–10–78 | CECO'S ANSWERS AND OBJECTIONS 11–4–78 | CECO'S SUPPLEMENTAL RESPONSE 1–19–79 |
|---|---|---|---|
| Interrog. 39 | Objection:<br><br>See Ceco's objection to Interrogatory No. 33. Ceco further objects to Interrogatory No. 39 on the ground that it impermissibly calls for hearsay, speculation or conjecture on the part of Ceco. | Objection:<br><br>See Ceco's objection to Interrogatory No. 33. Ceco further objects to Interrogatory No. 39 on the ground that it impermissibly calls for hearsay, speculation or conjecture on the part of Ceco. | Answer:<br><br>See Ceco's answer to Interrogatory No. 34. |
| 41 | Objection:<br><br>See Ceco's objection to Interrogatory Nos. 33 and 40. | Objection:<br><br>41(a)-(f). See Ceco's objection to Interrogatory Nos. 33 and 39. | Answer:<br><br>41(a)-(f). See Ceco's answer to Interrogatory No. 34. |
| 42 | Objection:<br><br>42 and 42(a)-(e). See Ceco's objection to Interrogatory Nos. 33 and 40. Ceco further objects to Interrogatory No. 42 and 42(a)-(e) on the ground that it seeks information which is not within the knowledge and control of Ceco and that to respond would be unduly burdensome, expensive and oppressive, would constitute an annoyance and cause significant hardship upon Ceco. | Objection:<br><br>42 and 42(a)-(e). See Ceco's objection to Interrogatory Nos. 33 and 39. Ceco further objects to Interrogatory No. 42 and 42(a)-(e) on the ground that it seeks information which is not within the knowledge and control of Ceco and that to respond would be unduly burdensome, expensive and oppressive, would constitute an annoyance and cause significant hardship upon Ceco. | Answer:<br><br>42 and 42(a)-(e). See Ceco's answer to Interrogatory No. 34. |
| 43 | Objection:<br><br>See Ceco's objection to Interrogatory Nos. 33, 40, 42 and 42(a)-(e). | Objection:<br><br>See Ceco's objection to Interrogatory Nos. 33, 39, 42 and 42(a)-(e). | Answer:<br><br>See Ceco's answer to Interrogatory No. 33. |
| 44 | Objection:<br><br>44(a)-(c)(v). See Ceco's objection to Interrogatory No. 33. | Objection:<br><br>44(a)-(c)(v). See Ceco's objection to Interrogatory No. 33. | Answer:<br><br>45(a)-(c)(vi). See Ceco's answer to Interrogatory No. 34. |
| 45 | Objection:<br><br>45(a)-(c)(vi). See Ceco's objection to Interrogatory No. 33. | Answer:<br><br>45(a)-(c)(vi). See Ceco's objection to Interrogatory No. 33. | Answer:<br><br>45(a)-(c)(vi). See Ceco's answer to Interrogatory No. 34. |
| 46 | Objection:<br><br>46(a)(b)(v). See Ceco's objection to Interrogatory No. 33. | Answer:<br><br>46(a)-(b)(v). See Ceco's objection to Interrogatory No. 33. | Answer:<br><br>46(a)-(b)(v). See Ceco's answer to Interrogatory No. 34. |
| 48 | Objection:<br><br>48 and 48(a)-(c) and (e)-(f): See Ceco's objections to Interrogatory Nos. 33 and 47. | Objection:<br><br>48 and 48(a)-(c) and (e)-(f). See Ceco's objections to Interrogatory Nos. 33 and 47. | Answer:<br><br>Yes. (a)-(c) and (e)-(f). The information sought by subparts (a)-(c) and (e)-(f) of Interrogatory No. 48 is protected from disclosure by the principle of grand jury secrecy. For further answer to subpart (f) of Interrogatory No. 48, see Ceco's answer to Interrogatory Nos. 32(b) and 47(c). |

| | Armco's Preliminary Objections 10–10–78 | Armco's Objection & Answers 11–4–78 | Armco's First Set of Supplemental and Revised Responses 1–25–79 | Second Set of Supplemental and Revised Responses 2–5–79 |
|---|---|---|---|---|
| Interrog. 32 | | (a) There was no investigation other than that conducted by Armco's counsel in preparation for litigation. (b) (i)-(iii) *Note* General Objection No. 4.<br><br>4. Armco objects to the interrogatories to the extent that they seek information (including but not limited to communications between Armco and its attorneys who have represented or are representing other defendants, material prepared in anticipation of litigation or for trial or the mental impressions of its attorneys) which is legally protected by applicable rules, privileges, doctrines and principles, including but not limited to the attorney-client privilege and the attorney work-product doctrine. (iv) None. | | |

| Armco's Preliminary Objections 10–10–78 | Armco's Objection & Answers 11–4–78 | Armco's First Set of Supplemental and Revised Responses 1–25–79 | Second Set of Supplemental and Revised Responses 2–5–79 |
|---|---|---|---|

Interrog.

**33**

(a) No. *Note* General Objection No. 4.

4. Armco objects to the interrogatories to the extent that they seek information (including but not limited to communications between Armco and its attorneys, communications between Armco's attorneys and attorneys who have represented or are representing other defendants, material prepared in anticipation of litigation or for trial or the mental impressions of its attorneys) which is legally protected by applicable rules, privileges, doctrines and principles, including but not limited to the attorney-client privilege and the attorney work-product doctrine.

**34**

On June 7, 1977 Armco was notified that it and two of its employees had been indicted for alleged violations of the antitrust laws, although such charges have never been established.

**35**

Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

**36**

Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

**37**

See Response to Interrogatory No. 35.

**38**

See Response to Interrogatories No. 35–37.

**39**

Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

**41**

Armco itself has no knowledge of any such communications. Appropriate inquiries have been made and as a result thereof, Armco in good

| Armco's Preliminary Objections 10–10–78 | Armco's Objection & Answers 11–4–78 | Armco's First Set of Supplemental and Revised Responses 1–25–79 | Second Set of Supplemental and Revised Responses 2–5–79 |
|---|---|---|---|

Interrog.

**42** — *(col 2)* faith represents that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

**42** SPECIFIC OBJECTION TO INTERROGATORY NO. 42. This interrogatory is drafted in such a way as to include conversations with certain of Armco's rebar material customers, who are also Armco's competitors, such as Carter-Waters which has a customer-competitor relationship with Armco, and therefore Armco further objects to this interrogatory to the extent it seeks information about the tens of thousands of such customer-oriented conversations which occurred on a daily basis over the relevant fifteen year period involved herein on the grounds that it seeks information not relevant to the subject matter of this action; that having to collect such information would constitute an annoyance and impose an undue and oppressive burden and expense upon Armco; and that the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

*(col 2)* As presently drafted, this interrogatory is excessively broad and requires inquiry into thousands of conversations over the requested 15 year time period with certain of Armco's rebar material customers who also compete with Armco, such as both Carter-Waters and Ceco which have customer-competitor relationships with Armco, and therefore Armco objects to this interrogatory to the extent it seeks information about such customer-oriented conversations which have occurred on the grounds that it seeks information not relevant to the subject matter of this action; that the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence; and that having to attempt to isolate particular conversations or subjects of conversation with competitors from the many thousands of conversations that are included within the scope of this interrogatory would constitute an annoyance and impose an undue and oppressive burden and expense upon Armco.

Apart from such customer-oriented conversations, Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

*(col 3)* Apart from communications in the ordinary course of handling to its customers or purchases from its suppliers who may also have been its competitors, Armco is not aware of any such communications. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that it is not aware of any persons who could provide such information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

**43** SPECIFIC OBJECTION TO INTERROGATORY NO. 43. *See* Specific Objection to Interrogatory No. 42.

*(col 2)* The term "agreed-upon maximum discount" is vague and ambiguous. *See* Response to Interrogatory No. 42.

*(col 3)* The term "agreed-upon maximum discount" is vague and ambiguous. Apart from communications in the ordinary course of handling sales to its customers or purchases from its suppliers who may also have been its competitors, Armco is not aware of any such communications. Appropriate inquiries have been made and as a result thereof Armco in good faith represents that it is not aware of any persons who could provide such information other than those who would refuse to do so, invoking their rights under the Constitution of the United States.

**44** *(col 2)* Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco can

| Armco's Preliminary Objections 10–10–78 | Armco's Objection & Answers 11–4–78 | Armco's First Set of Supplemental and Revised Responses 1–25–79 | Second Set of Supplemental and Revised Responses 2–5–79 |
|---|---|---|---|
| Interrog. | in good faith represent that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States. | | |
| 45  See Specific Objection to Interrogatory No. 42. | *See* Response to Interrogatory No. 42. | Apart from communications in the ordinary course of handling sales to its customers or purchases from its suppliers who may also have been its competitors, Armco is not aware of any such communications. Appropriate inquiries have been made and as a result thereof, Armco in good faith represents that it is not aware of any persons who could provide such information other than those who would refuse to do so, invoking their rights under the Constitution of the United States. | |
| 46 | Armco itself has no knowledge of any such alleged activities. Appropriate inquiries have been made and as a result thereof, Armco can in good faith represent that there are no persons who could provide the desired information other than those who would refuse to do so, invoking their rights under the Constitution of the United States. | | |
| 48 | Not to Armco's knowledge. | | |