**Eileen TUBBESING, Respondent,**

v.

**John Fox ARNOLD, et al., Appellants.**

**No. 83–2125.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1984.

Decided Aug. 22, 1984.

Curtis & Crossen, Kenneth M. Romines, Clayton, Mo., for appellants.

Czech & Hoffman, Clayton, Mo., for respondent.

Before ROSS, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Eileen Tubbesing brought this action under 42 U.S.C. § 1983 (1982) against the members of the Board of Election Commissioners of St. Louis County, Missouri, alleging that she had a constitutionally protected property interest in her employment with the Board. Tubbesing claimed that she was deprived of this property interest without due process when the Board terminated her. She sought damages of $250,-000, attorneys' fees and costs, and reinstatement to her former position. Alleging that the conduct of the Board members was willful and malicious, she also sought punitive damages in the amount of $500,-000. The Board members, John Fox Arnold, Al Bauer, Catherine Rea and Ann R. Ruwitch, filed a motion for summary judgment based on qualified immunity. They appeal from the district court's denial of summary judgment under the collateral order doctrine. 98 F.R.D. 555. We reverse and order entry of summary judgment in favor of the Board members on Tubbesing's claims for money damages.

Tubbesing was the Democratic Director of Elections with the St. Louis County

Board of Election Commissioners.[1] She was terminated by a three-to-one vote of the Board on September 1, 1981. The Board held an executive meeting on Friday, August 28, 1981. At that meeting some of the problems concerning the relationship between the two directors were discussed, including (1) Tubbesing's failure to work cooperatively with the other director; (2) Tubbesing's unprofessional conduct in regard to the automobile furnished to the lead director;[2] (3) Tubbesing's preferential treatment of some of the employees under her supervision; and (4) Tubbesing's unresponsiveness to the Board. The Board agreed to inform Tubbesing that they had lost confidence in her as a director and that they were going to seek a new Democratic Director. Arnold, chairman of the Board, told Tubbesing of the Board's decision, and asked her to resign. Tubbesing refused to resign, and on September 1 at a meeting which Tubbesing attended, the Board terminated her. Tubbesing did not request a hearing regarding her termination.

Tubbesing bases her claim of a property interest in her job on the language of the Personnel Policies and Benefits Manual of the St. Louis County Board of Election Commissioners which permits termination only for cause and provides an employee with a right to a pre-termination hearing. She also argues that it had been the custom and practice of the Board not to terminate an employee except for good cause shown and communicated to the employee prior to termination. Tubbesing alleges that she was fired without cause and without a hearing strictly for political reasons.

The Board contends that the Policy Manual does not apply to the job of Director of Elections. It maintains that it relied on the advice of legal counsel to the effect that the person who held the position of Director of Elections served at the pleasure of the Board.

The district court denied summary judgment, finding that factual issues remained to be determined with respect to the merits of Tubbesing's claim as well as the issue of qualified immunity. The Board brought this appeal from the denial of summary judgment on the issue of qualified immunity, and we stayed proceedings pending its determination.

**I.**

We must first determine whether we have jurisdiction over this interlocutory appeal. The Board contends that the district court's order is appealable under the collateral order doctrine. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). In *Evans v. Dillahunty*, 711 F.2d 828 (8th Cir.1983), this Court held that motions for summary judgment that are premised on qualified immunity are immediately appealable if the following criteria are met:

> The essential facts are not in dispute * *; and (2) the determination of whether the government official is entitled to immunity is solely a question of law.

*Id.* at 830.

Since only money damages were sought in *Evans, supra*, qualified immunity was a complete defense to the plaintiff's claims and prevented the defendants from being put to trial. In this case, however, Tubbesing is also seeking reinstatement; therefore, the Board members' qualified immunity defense would entitle them to summary

---

**1.** The bipartisan Board is appointed by the Governor with the advice and consent of the Senate. *Mo.Rev.Stat.* § 115.027 (1978). The Board conducts all public elections within its jurisdiction, *Mo.Rev.Stat.* § 115.023, and employs a staff and maintains offices for this purpose. *Mo.Rev.Stat.* §§ 115.015–.057. There are two directors, one Democrat and one Republican. *See Mo.Rev. Stat.* § 115.047 (1978). The "lead" director is the director of the same political party as the Governor.

**2.** The county government furnishes an automobile to the lead director. While Tubbesing was lead director she had the auto. When a Republican Governor was elected and the Republican director became lead director, Tubbesing refused to relinquish the auto until finally ordered to by Arnold. She persisted in a demand that a second automobile be provided for her although only one automobile had traditionally been furnished.

judgment only on the damages' claims. The Board would still be required to defend itself in any trial involving Tubbesing's claim for equitable relief. We believe, however, that the policies underlying the qualified immunity doctrine which justify the immediate appealability of a denial of summary judgment based thereon are just as compelling in this case as when only money damages are sought.[3] *Contra Bever v. Gilbertson,* 724 F.2d 1083 (4th Cir. 1984) (Hall, J., dissenting). That the Board will stand trial on the equitable claim does not change the fact that partial summary judgment based on qualified immunity eliminates the risk of personal liability. As the Supreme Court explained in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the threat of personal liability could deter all but the most resolute or irresponsible from discharging their public duties, or even from being willing to serve in public office. 457 U.S. at 813, 102 S.Ct. at 2736. We here deal with a citizen board, whose members serve part time, and these reasons are all the more compelling in such circumstances.

In *Harlow* the Supreme Court revised the test for qualified immunity, eliminating the subjective aspect so that more claims could be resolved on motions for summary judgment before trial. *McSurely v. McClellan,* 697 F.2d 309, 316 (D.C.Cir.

1982). The objective standard now permits summary judgment for the official if the law was not "clearly established" at the time the challenged action occurred. Withholding appellate review of pretrial denials of qualified immunity would frustrate *Harlow's* purpose in revising the test. Therefore, as long as the criteria set out in *Evans* are met, the district court's denial of summary judgment is appealable notwithstanding Tubbesing's claim for equitable relief.

In denying the Board's motion for summary judgment the district court stated that

> factual issues clearly remain in dispute regarding whether or not plaintiff had a property interest in continued employment and the right to procedural due process prior to termination. Further factual questions remain as to whether the defendants, even if protected by qualified immunity, acted with malice or recklessness so as to preclude them from such immunity. (citations omitted).

Beyond the conclusion that factual issues "clearly" remain in dispute, the court did not go on to articulate specifically the factual issues that must be determined.[4] We have carefully studied the record before the district court and believe that the facts material to the issue of qualified immunity

---

**3.** "[T]he expenses of litigation, the diversion of official energy from pressing public issues, * * the deterrence of able citizens from acceptance of public office," and the inhibition from "unflinching discharge" of duty were cited in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), as consequences to be avoided by prompt disposition of insubstantial claims. 457 U.S. at 814, 102 S.Ct. at 2737. These consequences are just as much a concern where a plaintiff seeks equitable relief in addition to money damages. Even though a trial still must be held in regard to the equitable relief claimed, "the fear of being sued and held personally liable for damages is a far cry from a suit for reinstatement or injunctive relief, which public officials face regularly in the course of performing their duties." *Bever,* 724 F.2d at 1091–92 n.4 (Hall, J., dissenting). In addition to bearing the responsibility for the outcome of the litigation, an official being sued personally for money damages, especially punitive damages,

may be required to retain private counsel at his own expense.

**4.** The district court stated only very generalized reasons for denying the motion for summary judgment. We are mindful that a ruling on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure does not require a detailed discussion of the reasons for granting or denying such a motion and, further, that a statement of findings of fact would be inconsistent with the rule. Nevertheless, we have observed that a statement of the facts relied on and the conclusions of the district court can be most helpful not only to litigants but also to a reviewing court. *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976). It would have facilitated our review of its order if the district court had more specifically set out the reasons for its denial. *See Kosak v. United States,* — U.S. —, — n. 4, 104 S.Ct. 1519, 1522 n. 4, 79 L.Ed.2d 860 (1984).

are undisputed and that those undisputed facts demonstrate that as a matter of law, the Board members are entitled to summary judgment on Tubbesing's claims for money damages. We conclude therefore that we have jurisdiction over this appeal.

## II.

■ Government officials are entitled to qualified immunity from suit as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Davis v. Scherer*, —— U.S. ——, ——, 104 S.Ct. 3012, 3018–19, 82 L.Ed.2d 139 (1984) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2739); *Green v. White*, 693 F.2d 45, 47 (8th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). The Supreme Court in *Davis* reiterated that the standard to be used in determining the availability of qualified immunity is solely an objective one:

> Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." No other "circumstances" are relevant to the issue of qualified immunity.

*Davis*, 104 S.Ct. at 3018–19 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2739) (citations omitted).

■ Since whether the Board members are entitled to qualified immunity depends only upon the "objective reasonableness" of their conduct, the disputed factual issues concerning malice, to which the district court referred in denying the summary judgment motion, are irrelevant to the determination of qualified immunity. Tubbesing alleged that the conduct of the Board was malicious and that she was fired strictly for political reasons. These allegations, however, when submitted to the test of the Board's motion for summary judg-

ment, are not supported by any evidence. In her own deposition, Tubbesing denies that she was terminated for political reasons, and she was unable to present any evidence supporting her allegations of malice.[5] Tubbesing's motion and affidavit in opposition to the Board's motion for summary judgment contains no reference to her allegations of malice or politically motivated firing. These issues are thus not a bar to summary judgment.

The only other factual issue mentioned by the district court is whether Tubbesing had a property interest in continued employment as a director, thus entitling her to certain due process rights. This issue goes to the merits of her claim, but it also defines the narrow issue to which *Davis* restricts our review. Under *Harlow* and *Davis* the threshold question is whether the conduct complained of violated clearly established law. Applying *Harlow* and *Davis* to Tubbesing's allegations and the deposition testimony before the district court, we conclude that Tubbesing's claims for money damages do not overcome the showing of objective reasonableness measured by clearly established law, and therefore should be determined by summary judgment.

Under Rule 56(e) of the Federal Rules of Civil Procedure, once a motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of his pleading." The Rule requires the responding party to set forth specific facts showing that there is a genuine issue for trial or else have summary judgment entered against him. *Miller v. Solem*, 728 F.2d 1020, 1023–24 (8th Cir. 1984); *McCormick v. Ross*, 506 F.2d 1205, 1208 (8th Cir.1974). Tubbesing's submission in response to the Board's motion for summary judgment and supporting docu-

---

**5.** When asked what evidence she had that led her to believe the individual Board members acted maliciously, Tubbesing responded, "Well, because I was—because I was just fired." In revising the test for qualified immunity, the *Harlow* Court concluded that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." 457 U.S. at 817–18. *See also Miller v. Solem*, 728 F.2d 1020, 1024–25 (8th Cir.1984).

ments does not address the issue established in *Harlow* and *Davis.*

Tubbesing bases her property right to continued employment with the Election Board on the Policy Manual, and in her amended complaint, the custom and practice of the Board. The deposition testimony submitted by the Board members in support of their motion for summary judgment established their claim that the custom and usage of prior Boards was that election directors served at the pleasure of the Board. Tubbesing's response to the Board's motion sets forth no specific facts which would rebut the Board's evidence and create a genuine issue of fact as to custom and practice. Certainly there is no demonstration of clearly established law. In her Motion and Affidavit in Opposition to Defendant's Motion for Summary Judgment, Tubbesing merely repeats, without further elaboration, some of the allegations contained in her amended complaint:

4. Plaintiff further states that she was an employee of the St. Louis County Board of Election Commissioners and was treated as an employee and there existed Personnel Policies and Benefit Manuals which applied to *all positions* in the employment of the St. Louis County Board of Election Commissioners. (emphasis in original).

5. Plaintiff further states that the Board members of the St. Louis Board of Election Commissioners had always treated her as an employee and entitled to all the benefits that all employees of the Election Board received and that the custom and practices of the Election Board were such that she was recognized as an employee as all other personnel employed by the Election Board.

There was uncontradicted deposition testimony, including that of Tubbesing, that the position of Election Director was a non-merit position. Tubbesing does not rest her claimed property right on a contract or state statute or regulation. Other than her interpretation of the Policy Manual, Tubbesing's only evidence in support of her claim are her subjective expectations. That is not enough to demonstrate a clearly established right. *See Hughes v. Whitmer,* 714 F.2d 1407, 1414 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Therefore, the only relevant issue remaining unresolved is whether the Policy Manual applies to the Directors.

Insofar as there is a disputed issue concerning the Manual, it involves the differing interpretations of Tubbesing and the Board. There is no dispute that the Manual was in effect and no dispute about the contents of the Manual. The only dispute involves its interpretation, and this is a question for the court. Rather than precluding summary judgment, the fact that the application of the Policy Manual is disputed merely emphasizes that the law at the time of the conduct complained of was not clearly established. Even considering the evidence in the light most favorable to Tubbesing, and giving her the benefit of all reasonable inferences, we cannot conclude that there is a genuine issue of fact concerning whether Tubbesing had a "clearly established" right to continued employment.

After a close reading of the Policy Manual, we are unable to determine that it is applicable to the Directors of Elections. Although section 1.01 of the Manual states that it applies "to all positions with the St. Louis County Board of Election Commissioners," the language throughout other sections of the Policy Manual indicates that the Manual does not apply to the Directors, but rather is to be used by the Directors when dealing with subordinate employees of the Board.[6]

---

**6.** The portions of the Policy Manual which indicate that the Manual is to be used by the Directors rather than applied to them include as follows:

3.00 Acting as Personnel Directors for the Board, the Directors are charged with the responsibility of recruiting * * *.
3.02 At the discretion of the Directors, the following hiring procedure shall be initiated * * *.

The Board sought the advice of counsel who told them that the Directors served at the pleasure of the Board. While reliance on the advice of counsel alone will not satisfy an official's burden of acting reasonably, in the instant case whether the Policy Manual applied to Directors is not clear, and the Board members acted in good faith in following their attorney's advice. *See Wentz v. Klecker,* 721 F.2d 244, 247 (8th Cir.1983).

A plaintiff who "seeks damages for violation of constitutional or statutory rights may overcome [an] official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis,* 104 S.Ct. at 3020–21. Since it is not clearly established that Tubbesing had a property interest in continued employment as a Director of Elections, as a matter of law the Board members cannot be held to have violated a clearly established property right of which a reasonable person would have known.[7]

If the law * * * was not clearly established, an official could not * * * fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

3.03 At any time during the probationary period * * *, the Directors, upon just cause, may remove an employee if, in the opinion of the Directors, the working test indicates * *.

5.02 All written reprimands shall be submitted to and kept by the Directors * * *. An employee may be suspended by the Directors without pay. * * * The Directors, acting upon the recommendation of the Supervisors, and upon consultation with the Board, may dismiss an employee at any time. The Directors shall give the employee a written notice of dismissal including the reasons thereof and send a copy of the notice to the Board.
5.03 An employee may be suspended, demoted or dismissed if, in the opinion of the Directors, an employee * * *.
5.04 Any employee who has been suspended, demoted or dismissed * * * may file with the Directors a complaint in writing and request a hearing. * * * [T]he Directors shall schedule a hearing as promptly as the circumstances permit, * * *. The Directors shall render a decision in writing.
6.01 The termination by the Directors of the services of an employee shall be termed a dismissal * * *.

*Harlow,* 457 U.S. at 818, 102 S.Ct. at 2739. We conclude that the "clearly established" test has not been met, that the Board members meet the requirements of qualified immunity, and, therefore, are entitled to summary judgment on Tubbesing's claims for money damages.

### III.

Tubbesing's amended complaint appears also to allege a deprivation of liberty as a result of her termination by the Board.[8] Even though we need not determine this issue in deciding whether the Board members are entitled to qualified immunity, we believe that it is possible to dispose of it as a matter of law based on the record before us.

The elements of a claim for deprivation of liberty on the part of a public employee include "that the reasons given for the discharge may severely damage the employee's reputation and that the employee claims those reasons were false." *Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976). Considering the evidence in the light most favorable to the non-moving party, as we must in reviewing a denial of a motion for summary

6.02 An employee may leave employment voluntarily by resignation, by stating the reasons in writing to the Directors.
6.04 [I]t shall be the duty of the Directors to recommend [an employee's] retirement.
7.02 Emergency vacation * * * shall only be granted upon authorization by the Directors and with just cause, * * *.
7.04 Sick leave * * * may be used for related reasons * * * with the approval of the Directors of Elections.
9.08 [A]ll employees are entitled to prompt and equitable resolution of any grievance, with the understanding that the decision of the Directors shall be final * * *.

7. This case differs from our recent decision in *McGee v. Hester,* 724 F.2d 89 (8th Cir.1983) in which we reversed a grant of summary judgment because the facts, when viewed most favorably to the plaintiff, showed a violation of a clearly established property right.

8. Tubbesing claims that she has suffered embarrassment and humiliation as a result of her termination.

judgment, *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982); *McSurely,* 697 F.2d at 321, we are able to determine as a matter of law that Tubbesing has not been deprived of any constitutionally protected liberty interest.

 The Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), and further explained in *Bishop, supra,* that one is not deprived of liberty when she or he is simply discharged and there is no public disclosure of the reasons for the discharge. 426 U.S. at 348, 96 S.Ct. at 2079. Tubbesing does not claim that the Board made public any reasons for her discharge which might severely damage her standing and reputation in the community. On the contrary, according to Tubbesing no reasons were given for her discharge and she does not know why she was terminated. Hence, it is clear that she fails to establish a right of recovery for deprivation of liberty.

We reverse the judgment of the district court and remand with directions to grant the defendants' motion for summary judgment on Tubbesing's claims for money damages and for any further proceedings regarding Tubbesing's claim for reinstatement not inconsistent with this opinion.