**Jorge E. Cancel LUGO, et al., Plaintiffs, Appellees,**

v.

**Carlos ALVARADO, etc., et al., Defendants, Appellants.**

**No. 86–1967.**

United States Court of Appeals, First Circuit.

Argued March 3, 1987.

Decided May 26, 1987.

* Of the District of Rhode Island, sitting by desig-

Ivonne Cruz Serrano, with whom Garcia Rodón, Correa Marquez & Valderas, Hato Rey, P.R., was on brief for defendants, appellants.

Frank Rodríguez García, Ponce, P.R., was on brief for plaintiffs, appellees.

Before COFFIN and TORRUELLA, Circuit Judges, and PETTINE,* Senior District Judge.

TORRUELLA, Circuit Judge.

This appeal concerns another of the myriad of personnel actions taken by the new administration which won the 1984 elections in Puerto Rico. *See, e.g., Rosado v. Burgos*, 813 F.2d 1263 (1st Cir.1987). The issue raised, however, is limited to determining whether appellant is entitled to a stay of *all* discovery proceedings pending resolution by the district court of a claim of qualified immunity. We answer in the negative and affirm the district court's well-tailored disposition of this matter.

Appellant Carlos Alvarado is the executive director of the Puerto Rico Electric Power Authority (PREPA) and appellee Jorge E. Cancel Lugo was, until transferred to a lesser position by appellant, the superintendent of the Isabela Irrigation District of PREPA. Claiming that his demotion was instigated solely by his affiliation to the losing political party, appellee on February 3, 1986, filed an action in the district court seeking reinstatement and damages pursuant to 42 U.S.C. § 1983. Appellant answered the complaint on April

nation.

2, 1986, raising as a defense a claim of qualified immunity.

On May 23, 1986, the district judge held an initial scheduling conference. The order entered states as follows:

3. Discovery

Plaintiffs requested ninety (90) days to conclude their discovery. They will send interrogatories, requests for admissions and for production of documents to defendants within the next two weeks. Thereafter they plan to depose defendant Alvarado, three or four PREPA employees and possibly the Mayor of Quebradillas on the issue of the political motivation behind the transfer.

Defendants will need from four to five months to conclude their discovery. They also plan to submit to plaintiffs within the next two weeks interrogatories, requests for admission and to produce documents. They plan to conduct about fifteen depositions (5 prior supervisors of Mr. Cancel-Lugo, 2–3 of Mr. Cancel-Lugo's actual supervisors, 2 officials from PREPA's personnel division, 3 employees under plaintiff's supervision, plaintiff and his wife) ...

The district judge also noted that defendants intended to file a motion for summary judgment raising the immunity defense and ordered that its filing take place no later than June 30, 1986. The parties were to engage in "active discovery efforts," without interruption by pretrial motions unless ordered by the court. Discovery was to conclude September 26, 1986, with a "mid-discovery" conference scheduled for August 15.

Thereafter, *appellant* engaged in extensive discovery. On May 29, 1986, he filed a "First Set of Interrogatories" which consisted of 46 questions with numerous subdivisions; and on August 25, 1986, he filed a detailed "Request for Production of Documents." Both were eventually answered by appellee, although not before appellant filed three different motions to compel appellee's response, the last of which was filed on September 15, 1986. In addition, appellant sought to depose appellee, but the deposition was postponed by mutual agreement and is still pending.

Meanwhile, on July 7, 1986 appellant filed a motion for summary judgment claiming that as a matter of law he was entitled to qualified immunity from this suit. Appellee had not, as of that date conducted any of its heralded discovery.

On August 11, 1986 appellant filed a motion requesting an order staying *all* discovery, and pretrial and trial proceedings, until the issue of qualified immunity was decided. Appellant claimed that the holding in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), mandated such an outcome. On September 9, 1986 the district court, in a well-reasoned opinion, denied appellant's blanket request, but left the door open to a request for a protective order if appellee should engage in any discovery that was oppressive, unnecessary or disruptive of the public official's functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court ruled that where the discovery was not directed solely at damage issues related to the qualified immunity defense (*i.e.*, "matters of personal motivations, related to the subjective components of the qualified immunity doctrine"), but rather at the injunctive relief, the granting of an unqualified stay of all discovery, would:

seriously curtail a civil rights plaintiff's opportunity to present an adequate opposition to the [qualified immunity] motion itself or to even gather and present evidence at a preliminary injunction hearing while the typical defendant in this case will greatly enjoy the advantage of a greater access and control over the evidence.

Considering appellant's conduct prior to filing its motion to stay discovery, as well as thereafter, the mere filing of the motion to stay, to say nothing of the taking of this appeal, demonstrates considerable *chutzpa*,[1] bordering on bad faith abuse of

---

1. Yiddish idiom meaning "gall, brazen nerve, effrontery." *See* Rosten, *The Joys of Yiddish,* Washington Square Press, New York, pp. 92–93.

the processes of both the district court and this court. In fact it could very well be argued that appellant's use of discovery against appellee estops him from raising any limited right that he may have had under *Mitchell* and *Harlow* to restrict the scope of appellee's discovery against him. *See Shenker v. Sportelli*, 83 F.R.D. 365, 367 (E.D.Pa.1979); Fed.R.Civ.P. 26(d). Such estoppel arises not only from appellant's engaging in active discovery against appellee but also in his acquiescence to the discovery schedule established by the district court after consultation with the parties. *See Casson Const. Co., Inc. v. Armco Steel Corp.*, 91 F.R.D. 376, 379 (D.Kan. 1980).

We do not rest our decision, however, solely on appellant's conduct. Appellant mistates the rulings in *Mitchell* and *Harlow.* Those cases were suits for damages only, unlike this case, where the plaintiff also requested injunctive relief, as to which a defense of qualified immunity is totally immaterial. *Tubbesing v. Arnold*, 742 F.2d 401, 404 (8th Cir.1984).

In *Harlow* "[t]he issue [was] the scope of the immunity available to the senior aides and advisers of the President." *Id.* 457 U.S. at 802, 102 S.Ct. at 2730. "[N]early eight years of discovery" had taken place, *id.* at 805, 102 S.Ct. at 2731, and thus the appropriateness of discovery was not before the Court on appeal. Moreover, the court "emphasize[d] that [its] decision applie[d] only to suits for civil *damages* ... express[ing] no view as to ... [actions] in which injunctive or declaratory relief" was sought. *Id.* at 819 n. 34, 102 S.Ct. at 2739 n. 34 (emphasis in original).

We move to *Mitchell.* Here a former Attorney General was sued for a claimed violation of civil rights by the interception of telephone conversations. The issues on appeal were whether he was absolutely immune and whether interlocutory appeal

was available on *that* question. *Id.* 105 S.Ct. at 2809. "Discovery and related preliminary proceedings [had] dragged on for ... five-and-a-half years." *Id.* at 2810. Thus, as in *Harlow*, the appropriateness of conducting discovery was not an issue on appeal.

There are powerful policy reasons why discovery should not be halted. Regardless of what happens to the damage claim in this case, the equitable requests stand on a different footing. *Tubbesing, supra.* This fact of life in political discrimination litigation translates into two pragmatic realities. First, the suspension of discovery proceedings on the equitable claims, solely because of an allegation of qualified immunity, only delays the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims, irrespective of whether there is a surviving damage action. Even if we overlook considerations of efficient calendar management by the trial court, considerations which obviously are not to be slighted, this discovery should be carried out sooner rather than later, particularly where, as here, there are claims of irreparable injury. The expeditious handling of these matters is especially important in cases where temporary relief is requested and/or granted. *See* Fed.R. Civ.P. 65(b).

Second, and closely related to the first point, any elimination of "disruptive" discovery against government officials in a civil rights suit in which both damage and equitable relief are sought would be totally illusory, because in most cases the scope of discovery as to the injunctive claim is practically the same as that involved in proving damages. Even if defendant succeeds in dismissing the damage action, his governmental psyche will presumably be just as "disrupted" by the remaining discovery procedures.[2]

**2.** There are circumstances when discovery should be permitted even absent an equitable claim. The qualified immunity inquiry involves not only the question of "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions," *Mitchell v. Forsyth*, 105 S.Ct. at 2816

and n. 9, but also whether "the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant standard." *Harlow v. Fitzgerald*, 457 U.S. at 819, 102 S.Ct. at 2738. *See also Fernandez v. Leonard*, 784 F.2d 1209, 1216 (1st Cir.1986); *Floyd v. Farrell*, 765 F.2d 1,

**8**

Last but not least, we must comment on the interlocutory nature of this appeal. When all is said and done what we have before us is a request for review of a pretrial discovery order. Such orders are not appealable before final judgment. *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Bever v. Gilbertson,* 724 F.2d 1083, 1087 (9th Cir.1984); *Grinnell Corporation v. Hackett,* 519 F.2d 595 (1st Cir.1975). The Court of Appeals for the Second Circuit in *American Express Warehousing, Limited v. Transamerican Insurance Company,* 380 F.2d 277, 280 (2d Cir.1967) succinctly stated the reasons for denying immediate appeal from such orders:

> [A]n appellant's ultimate right of review upon an appeal from a final judgment in the action; the elimination of unnecessary appeals, since the complaining party may win the case or settle it; the absence of irreparable harm from the vast majority of orders requiring production of documents; the potential for harassment of litigants by nuisance appeals, and the fact that any appeal tends to delay or deter trial or settlement of a law-suit; the burden on the reviewing court's docket from appeals of housekeeping matters in the district courts; and the slim chance for reversal of all but the most unusual discovery orders.

Although we are not prepared to say that in light of *Harlow* and *Mitchell,* no situation will arise in section 1983 cases in which an interlocutory appeal from a discovery order is unavailable,[3] particularly when we consider the narrowly tailored order presently before us, it is clearly apparent that no valid ground exists for permitting interlocutory appeal from this order.

The appeal is *dismissed.*

4 n. 1 (1st Cir.1985). If the defense claims such extraordinary circumstances, the plaintiff is entitled to discovery to probe those circumstances.

3. *E.g.,* a section 1983 case for damages only in which the judge inordinately delays decision on qualified immunity but allows extensive discovery.