Domingo **RODRIGUEZ OTERO**, et al., Plaintiffs,

v.

Jose L. **RIEFKOHL**, et al., Defendants.

Civ. No. 86–0295 (JP).

United States District Court, D. Puerto Rico.

June 17, 1987.

Frank Rodríguez García, Ponce, P.R., for plaintiffs.

Alice Net Carlo, García Rodón & Valderas, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for injunctive relief and damages brought under the first and fourteenth amendments to the United States Constitution and under 42 U.S.C. section 1983. Plaintiff Rodríguez Otero alleges that he was demoted from one position to another and transferred to a third because of his political affiliation. Plaintiff contends that this course of action constituted a constructive discharge, culminating in plaintiff's resignation from his civil service position. Defendant has filed a motion for partial summary judgment as to the damage claims, invoking the doctrine of qualified immunity.

> Summary judgment is proper
>
> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court must examine the record "in the light most favorable to the party opposing the motion." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1972).

> Similarly the court must indulge all inferences favorable to the party opposing the motion. Those rules must be applied with recognition of the fact that it is the function of summary judgment "to pierce formal allegations of facts in the pleadings ...", and to determine whether further exploration of facts is necessary.

The language of Rule 56(c) sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion. He must establish the existence of an issue of fact which is both "genuine" and "material." A material issue is one that affects the outcome of this litigation.

*Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

As the Supreme Court has recently amplified, the existence of some alleged factual dispute will not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986) (emphasis in original); *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987).

Pursuant to the stipulations of the parties, the Court finds that there is no genuine issue as to the following material facts:

1. Plaintiff was appointed Regional Director of the Manatí Region at the Puerto Rico Aqueduct and Sewer Authority (PRASA) on August 18, 1983.

2. Plaintiff is a member of the New Progressive Party (NPP).

3. Plaintiff held this appointment as a trust employee as defined in 3 L.P.R.A. § 1350 (1978).

4. The duties contained on plaintiff's classification questionnaire are as follows:

a) Supervises and administers everything related to the operation and conservation of all the urban and rural Aqueduct and Sewer systems in the Manatí Region and represents the Executive Director.

b) Writes and signs correspondence on behalf of the Authority.

c) Resolves the grievances submitted by the delegates of the unions represented in their Region.

d) Attends visits from officials of other governmental agencies and resolves the problems presented.

e) Visits the central offices when required to receive orientation or instructions from the Executive Director or the Area Director.

f) Will attend and resolve grievances presented by the union personnel and management personnel pursuant to what has been established in the collective bargaining agreements.

g) Will attend and resolve those grievances filed by the delegates, chapter presidents and/or President of the Union at the corresponding level.

h) May be designated to participate as a member of the Grievance Committee as a member of the Bargaining Committee or in any other Committee which may be established in the collective bargaining agreements, as may be designated by the Executive Director.

5. The NPP lost the Puerto Rico general elections in 1984, and with it control of the executive branch of the Commonwealth governments.

6. The standard bearer of the winning Popular Democratic Party (PDP), Rafael Hernández Colón, took office as Governor of Puerto Rico in early 1985.

7. Defendant Riefkohl was appointed Acting Director of PRASA after the change of administration.

8. On March 5, 1985, defendant Riefkohl sent a letter to plaintiff transferring plaintiff to a position as "technical assistant" to the Arecibo Regional Director, with a duty station in Manatí.

9. On June 6, 1985, plaintiff was instructed to report to the San Juan Region for work as an engineer in Carolina on June 10, 1985.

10. Plaintiff submitted his resignation on June 12, 1985.

11. The resignation letter reads, in part: The distance to be travelled daily and the expenses which are being incurred by me are extremely onerous for me. This change has generated a condition that is affecting my physical and mental condition and also affecting the interrelationships with my family and my social conditions.

Therefore, I am submitting my resignation ... as Regional Director of Manatí effective this afternoon, Wednesday, June 12, 1985.[1] This way I will be able to obtain some other job to obtain the sustence of my family.

I am truly sorry that I will not be able to continue rendering my professional services to the people of Puerto Rico as I have done for the last two years in this Aqueduct Authority.

I thank you for the opportunity given to me and I place myself at your orders.

12. The resignation was formally accepted on July 30, 1985.

13. During the period between March 5, 1985, the date of the first transfer, and Rodríguez Otero's resignation on June 12, 1985, his salary remained unchanged.

### I.  *First Amendment Claim*

Whether political affiliation may be an appropriate requirement for the position of Regional Director at PRASA is answered by the two-part analysis set forth in *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The first inquiry is "whether the position at issue, no matter how policy-influencing or confidential it may be, relates to 'partisan political interests ... [or] concerns.'" *Jiménez Fuentes,* 807 F.2d at 241, *quoting Branti v. Finkel,* 445 U.S. 507, 519, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574, 584–85 (1980). "That is, does the position involve government decision-making on issues where there is room for political disagreement on goals or their implementation? Otherwise stated, do party goals or programs affect the direction, pace, or quality of governance?" *Jiménez Fuentes,* 807 F.2d at 241–42. We are not bereft of authority in this area. In *Mendez Palou v. Rohena Betancourt,* 813 F.2d 1255 (1st Cir.1987), one of the three appellees worked for PRASA. Although the "room for political disagreement" in that agency was not thoroughly examined, the decision tacitly assumed that the first *Jiménez Fuentes* inquiry was satisfied. Although the provision of fresh water and disposal of waste water to the citizenry may seem mundane, it can be politically charged. In *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.1985), the Seventh

---

1. The letter is erroneously dated July 12, 1985. The Court takes judicial notice of the fact that in 1985, June 12 was indeed a Wednesday, while July 12 was a Friday.

Circuit characterized the district court's assessment of the provision of universal water services as apolitical "an unduly myopic view of the role of politics." *Tomczak*, 765 F.2d at 641. The Court stated that the "primary function of any local governmental entity is the provision of services" and that elections "often turn on the success or failure of the incumbent to provide these services." *Id.* There is nothing in the record before us or that we may take judicial notice of, that would lead us to conclude that the provision of fresh water and disposal of waste water here in Puerto Rico is not politically charged. *E.g., United States v. Puerto Rico Aqueduct and Sewer Authority, et al.,* Civ. No. 78–038(CC) (D.P.R. May 4, 1987) (fining PRASA $32,032,600.00 for noncompliance with court orders).[2]

The position of Regional Director supervises the whole panoply of services by the authority within the appropriate region. We therefore hold that the position satisfies the first inquiry.

Our second inquiry involves the inherent powers and priviledges of the position of Regional Director. As can be readily ascertained by perusal of the classification questionnaire, the Regional Director has responsibilities that are not well defined and are of broad scope in that he "[s]upervises and administers everything related to the operation and conservation of all urban and rural" systems in the region. The Supreme Court has noted that this sort of grant of authority more likely is made to a person who "functions in a policymaking position." *Elrod v. Burns,* 427 U.S. 347, 368, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547, 562 (1976); *see also Mendez Palou,* 813 F.2d at 1263 (PRASA Deputy Executive Director for Special Affairs). It is also evident that plaintiff operates as spokesperson for the authority. Finally, given his authority over labor-management grievances, it can only be said that plaintiff has access to confidential information. In short, the Court must conclude that Rodríguez Otero did not benefit from a

clearly established constitutional right protecting him from dismissal because of this NPP affiliation. *Rosario Nevárez v. Torres Gaztambide,* 820 F.2d 525, 528 (1st Cir.1987); *Mendez Palou,* 813 F.2d at 1262; *Jiménez Fuentes,* 807 F.2d at 246. It was therefore objectively reasonable for defendants to believe that the person occupying the Regional Director's post could be replaced on the basis of political affiliation. Defendants are therefore entitled to immunity for damages arising from plaintiff's removal from the post of Regional Director, insofar as plaintiff's first amendment claim is concerned.

■ This does not, however, end our inquiry, for plaintiff also alleges that he was transferred from his second position, technical assistant to the Arecibo Regional Director, to his third and final position, engineer for the San Juan Region, working in Carolina, on the basis of his political affiliation. Finally, plaintiff alleges that he was constructively discharged from his last position.

In the mass of documentation supporting defendants' summary judgment motion, there are not even any position descriptions for either of the last two positions Rodríguez Otero held. The Court is not in a position to make a reasoned decision as to whether political affiliation was an appropriate requirement for residing in these posts. Consequently, the Court simply cannot make a finding as to whether defendants could objectively reasonably believe that the person occupying the position of technical assistant to the Arecibo Regional Director or engineer in the San Juan Region could be replaced on the basis of political affiliation. Granting summary judgment at this juncture as to these claims would not be proper.

## II. *Fourteenth Amendment Claim*

■ Defendants also move for qualified immunity for damages resulting from plaintiff's fourteenth amendment right to

---

**2.** The imposition of this fine has focused much public attention on the Authority. This attention fits squarely within the "success or failure

of the incumbent to provide services" situation envisioned by the *Tomczak* court.

due process. In order to have a protected property right, plaintiff must have a proper interest. Property interests are creations of sources outside the Constitution, such as state law. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Rodríguez Otero's position as Regional Director was classified as one of trust and the record indicates that this status remained unchanged. Trust positions are of "free selection and removal" under Puerto Rico law, and this status does not endow the holder with a constitutionally protected property interest. *Laureano Agosto v. García Caraballo,* 731 F.2d 101 (1st Cir. 1984). Defendants are entitled to qualified immunity on this claim.

Wherefore, defendant's motion for partial summary judgment on the basis of qualified immunity as to damages arising from plaintiff's transfer from his position as Manatí Regional Director to technical assistant to the Arecibo Regional Director is GRANTED. Defendants' motion for partial summary judgment on the basis of qualified immunity as to damages arising from plaintiff's subsequent transfer and termination of employment is DENIED. Defendants' motion for partial summary judgment as to damages arising from alleged violations of plaintiff's due process rights is GRANTED.

Defendants' and plaintiff's motions for stay of these proceedings are DENIED. *Cancel Lugo v. Alvarado,* 819 F.2d 5 (1st Cir.1987).

The Court also has before it defendant's Motion to Dismiss the claims of plaintiff Norma M. Cortés Batista, Fed.R.Civ.P. Rule 12(b), for lack of standing. Defendant argues that plaintiffs' complaint should be dismissed as to plaintiff's wife because the spouse is not the victim of any alleged unconstitutional conduct. Plaintiff has not opposed the motion.

In ruling on a Rule 12(b) motion, this Court must accept as true the facts as averred in the complaint, and any inferences must be drawn in favor of the opposing party. *Warth v. Seldin,* 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975). A motion to dismiss "is justified only when the allegations of the complaint clearly demonstrate that plaintiff does not have a claim." C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 at 604 (1969). Plaintiffs allege in their complaint that plaintiff Rodríguez Otero was demoted and transferred from one civil service position to another because of his political affiliation. These allegations, if proven, could show that plaintiff Rodríguez Otero was discriminated against in violation of 42 U.S.C. § 1983 (1982).

In order to state a claim cognizable under Section 1983, a plaintiff must allege "that some person has deprived him of a federal right." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Section 1983 imposes liability for conduct that subjects, or causes to be subjected, the complainant to the deprivation of a right secured by the Constitution and laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). The law is clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights. *E.g., Dohaish v. Tooley,* 670 F.2d 934 (10th Cir.1982) (father had no standing to sue under section 1983 for alleged violations of deceased son's civil rights); *Rosario Nevárez v. Torres Gaztambide,* 633 F.Supp. 287 (D.P. R.1986), *rev'd on other grounds,* 820 F.2d 525 (1st Cir.1987); *see also Rodríguez Hernández v. Almodóvar,* 631 F.Supp. 960 (D.P.R.1986) (spouse and conjugal partnership, as separate entities against whom no alleged discrimination had been practiced, had no standing to sue under § 1983 for alleged discrimination against plaintiff).

Here, plaintiff Cortés has not alleged any discrimination against her on the basis of her political affiliation, or indeed, any other action taken by defendants against her that would be cognizable under section 1983.

Defendant has likewise moved to dismiss the claims of plaintiff conjugal partnership. The analysis is identical. Plaintiff partnership has not alleged any discriminatory ac-

tion by defendants against it. It may not sue derivatively through one of its member's rights. *Almodóvar,* 631 F.Supp. at 961 n. 1.

Accordingly, we hold that plaintiffs Cortés and the conjugal community property partnership lack standing under Article III of the United States Constitution to bring the present action.

The Court is now faced with pendent Commonwealth claims by plaintiffs Cortés and the conjugal property partnership. Having found that these plaintiffs lack standing to sue under their federal claims, plaintiffs lose the federal peg upon which to hang their pendent claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

For the reasons set forth, the Court ORDERS as follows:

1) defendants' Motion to Dismiss the claims of plaintiff Norma M. Cortés Batista under 42 U.S.C. § 1983 is GRANTED and that claim is hereby DISMISSED.

2) defendants' Motion to Dismiss plaintiff conjugal partnership's claim under 42 U.S.C. § 1983 is GRANTED and that claim is hereby DISMISSED; and

3) the pendent Commonwealth claims of plaintiffs Cortés and partnership are hereby DISMISSED.

After due consideration, the Court APPROVES AND ADOPTS the proposed Pretrial Order, as modified by this Opinion and Order. The Clerk shall file and docket the same.

The Clerk shall act accordingly.

IT IS SO ORDERED.