**David LIBBY, et al.,**
**Plaintiffs, Appellees,**

**v.**

**Clifford MARSHALL, et al.,**
**Defendants, Appellees.**

**Michael Dukakis, et al.,**
**Defendants, Appellants.**

**No. 87–1041.**

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1987.
Decided Nov. 24, 1987.

Carl Valvo, Asst. Atty. Gen., with whom Steven H. Goldberg, Asst. Atty. Gen., and James M. Shannon, Atty. Gen., Boston, Mass., were on brief, for, defendants, appellants.

Pamela J. Wood with whom Choate, Hall & Stewart, Boston, Mass., was on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

The state defendants appeal from the district court's denial of their motion to dismiss, a motion that was grounded in part upon the Eleventh Amendment. Because we conclude that the appeal is interlocutory, and that we lack jurisdiction over the appeal, we do not reach the merits of defendants' contention that the Eleventh Amendment bars suit against them.

---

# I. BACKGROUND

This interlocutory appeal arises out of a section 1983 class action brought by the inmates of the Norfolk County (Massachusetts) House of Correction against various county and state officials in Massachusetts. The plaintiffs, who initiated this suit in 1983, amended their complaint in April 1986 to include several additional state defendants: Governor Michael Dukakis, Secretary of Human Services Philip Johnston, Secretary of Administration and Finance Frank Keefe, Chairwoman of the Senate Ways and Means Committee Patricia McGovern, and Chairman of the House Ways and Means Committee Richard Voke (the "state defendants"). The thrust of the amended complaint is that these supplemental defendants are, in their official capacities, authorized by state statutes to approve expenditures for the betterment of the Commonwealth's jails, and that such funding is necessary to remedy the existing unconstitutional conditions therein. The amended complaint thus seeks an injunction commanding the state defendants to perform the fiscal acts authorized by state law and allegedly required by the Constitution.

The state defendants moved to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(1), arguing that the Eleventh Amendment bars the relief plaintiffs seek.[1] The district court denied the motion, *Libby v. Marshall*, 653 F.Supp. 359 (D.Mass.1986), and this appeal ensued.

# II. THE COLLATERAL ORDER DOCTRINE

The statute necessarily relied upon by appellants to confer jurisdiction over their appeal is 28 U.S.C. § 1291 (1982), which provides in relevant part, "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States." Denial of a motion to dismiss is not ordinarily a "final" decision under section 1291 since the case will continue forward in the district court

---

* Of the Second Circuit, sitting by designation.
1. They also moved to dismiss for failure to state a claim under Rule 12(b)(6). Their appeal, however, is limited to the Eleventh Amendment issue.

thereafter. Appellants contend, however, that the district court's refusal to dismiss is, in the unique facts of this case, an appealable final order under the doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen* the Court recognized an appeal from district court decisions within

> that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. at 1225.

The state defendants' argument proceeds on two related fronts. First, they argue that the district court's decision passes the four-prong collateral order test this circuit established in *United States v. Sorren*, 605 F.2d 1211, 1213 (1st Cir.1979). Second, they claim that because the district court denied their claim of an "immunity" its decision is therefore appealable under the line of Supreme Court immunity cases culminating in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In these cases the Court has held that the denial of certain immunity claims cannot be redressed upon appeal from a final judgment and that these decisions are thus immediately appealable.

We discuss the above issues in reverse order.

### III. MITCHELL v. FORSYTH

The issue before the Supreme Court in *Mitchell* was whether the denial of a defendant's motion for summary judgment based on qualified immunity was appealable under the collateral order doctrine. The Court observed that the prime characteristic of an appealable collateral order is that if the order cannot be reviewed before the proceedings terminate it can never effectively be reviewed at all. *See Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815. *See also Rodriguez v. Banco Central*, 790 F.2d 172, 178 (1st Cir.1986) (stating that the third

prong in the collateral order test—whether the right asserted is capable of vindication on appeal from a final judgment—should be the "central focus and perhaps even the dispositive criterion"). The Court noted that on three prior occasions it had held that certain claims of right could not be vindicated on appeal from a final judgment, and therefore their denial was appealable. *Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815 (citing *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2304, 52 L.Ed.2d 651 (1977) (right not to be exposed to double jeopardy); *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (right to absolute executive immunity); *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (congressman's immunity under Speech and Debate Clause)). Concluding that the common denominator of these three cases was the implication of an "absolute immunity" from standing trial, the Court framed its inquiry accordingly:

> At the heart of the issue before us is the question whether qualified immunity shares this essential attribute of absolute immunity—whether qualified immunity is in fact an entitlement not to stand trial under certain circumstances.

*Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815.

*Mitchell* answered this question in the affirmative. The Court stated that the "conception animating" the qualified immunity doctrine, as refashioned in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), was that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" 472 U.S. at 525, 105 S.Ct. at 2815 (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739.) Reasoning from the nature of the pernicious consequences the qualified immunity doctrine was designed to avoid—inhibiting officials' discretion, distracting officials from their duties, deterring able people from entering public service—the Court concluded that the entitlement to qualified immunity was indeed an *"immunity from suit* rather than a mere defense to liability;

and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2816 (emphasis in original).

Here, the state defendants argue that because their motion to dismiss is likewise grounded upon an "immunity," to wit, the sovereign immunity afforded by the Eleventh Amendment, they should also be allowed to appeal without delay from its denial.[2] Their position is not unprecedented. The Second Circuit endorsed this view in *Minotti v. Lensink*, 798 F.2d 607 (2d Cir. 1986), stating, "In the case of an absolute immunity such as that provided by the eleventh amendment, the essence of the immunity is the possessor's right not to be haled into court—a right that cannot be vindicated after trial." *Id.* at 608.

Notwithstanding our great respect for the judgment of our sister circuit, we are unable to agree with its panel holding in *Minotti*. We do not accept the talismanic significance that both appellants and the Second Circuit seemingly assign to the general concept of immunity as invariably triggering an interlocutory appeal. *Mitchell v. Forsyth*, in our view, does not go so far. We reject the proposition that the Eleventh Amendment passes the *Mitchell* litmus test, *i.e.*, that a state's sovereign immunity is in fact an entitlement not to stand trial. *See Mitchell*, 472 U.S. at 525, 105 S.Ct. at 2815.

## IV. THE ELEVENTH AMENDMENT

A critical difference between this case and *Mitchell* is that the state defendants here are being sued in their *official capacities*. Injunctive relief is sought that would require them to exercise their official powers in certain ways. It follows that the Commonwealth of Massachusetts is the real party in interest even though the state defendants are denominated by their individual names. That the state alone is the real defendant is true however the Eleventh Amendment issue may be resolved. *Compare Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest"), with *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985) (describing a suit challenging the constitutionality of a state official's action in enforcing state law as an "exception" to the principle that *a state* may not be sued in federal court). Thus, analysis under the *Mitchell* standard must recognize that any immunity enjoyed and any liability risked belong to the state, not to the named defendants as individuals. It follows that the concerns voiced in *Mitchell* as to the pernicious consequences of lawsuits against public officials—inhibiting officials' discretion, distracting them from their duties, deterring people from entering public service—are largely irrelevant.[3]

2. The Eleventh Amendment provides,

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. By the judicial construction given the Eleventh Amendment in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the amendment extends not only to suits against a state by citizens of "another state" or a "foreign state," but also to a suit brought against a state by a citizen of that same state.

3. Not only are the state defendants here unaffected by the specter of personal liability, but, since the state itself is the real party in interest, the burdens of litigation will be borne primarily by the Commonwealth's lawyers, and the risks and distractions the lawsuit causes the named

defendants will be minimized by their attenuated role in the case.

Recent cases from this circuit and others have held a denial of qualified immunity in a damages claim brought against a public official *in his individual capacity* appealable notwithstanding a simultaneous claim against the public official in his official capacity. *See De Abadia v. Izquierdo Mora*, 792 F.2d 1187 (1st Cir. 1986); *Scott v. Lacy*, 811 F.2d 1153 (7th Cir. 1987); *Kennedy v. City of Cleveland*, 797 F.2d 297, 306 (6th Cir.1986); *Tubbesing v. Arnold*, 742 F.2d 401 (8th Cir.1984). *But see Bever v. Gilbertson*, 724 F.2d 1083 (4th Cir.1984). Our view on this issue rests on the belief that an official sued in both his individual and official capacities has much to gain from having his qualified immunity defense (on the damages claim) resolved before trial, even if he still must "stand trial" on the claim against him in his official

Indeed, some commentators believe that the Eleventh Amendment is analytically more akin to a bar for lack of federal subject matter jurisdiction than to a true immunity.[4] *See, e.g.,* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 52 (1983); Amar, *Of Sovereignty and Federalism,* 96 Yale L.J. 1425, 1473–84 (1987). *Cf. Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974) (noting that an "Eleventh Amendment defense sufficiently partakes of a jurisdictional bar that it need not be raised in the trial court"); *Welch v. State Department of Highways & Public Transportation,* — U.S. —, 107 S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987).[5] But even assuming the amendment is properly characterized as an "immunity," or even as an "absolute immunity," the rationale of *Mitchell v. Forsyth* is inapplicable. In *Mitchell,* as already noted, the Court was concerned about the damage done to the individual official by subjecting him to a protracted trial before sustaining his claim of personal immunity. If a public official with a bona fide personal immunity is improperly haled into court in a suit against him in his individual capacity, he is unable to vindicate his "entitlement" to the immunity upon appeal from a final judgment because the damage—subjecting the official to trial—has effectively been done. But no such special damage accrues to the state simply because of the indignity of its being "haled into court." The damage the Eleventh Amendment seeks to forestall is that of the state's fisc being subjected to a judgment for compensatory relief. Only if the state is forced to use funds from the state treasury to satisfy a compensatory judgment do the adverse consequences that the Eleventh Amend-

ment prohibits occur. If improperly haled into federal court, and ordered to pay a judgment that is compensatory in nature, a state may seek a stay from enforcement of the judgment pending appeal, and may request an appellate court to determine the validity of its Eleventh Amendment defense. If the appellate court upholds the Eleventh Amendment defense on appeal, the evil the Eleventh Amendment protects against is avoided. The judgment will be vacated—the state treasury will remain intact.

To posit the contrary, that the essence of sovereign immunity is an immunity from trial itself, is to overlook the reality of the *Ex Parte Young* exception to the Eleventh Amendment. *See also* note 4, *supra.* This exception, as the Supreme Court has observed, is necessary to give vitality to the notion of the supremacy of federal law. *See Green v. Mansour,* 106 S.Ct. at 426. Our federal system could hardly tolerate the inability of federal courts to enjoin a continuing violation of federal law. *See id.* But because of *Ex Parte Young,* a state has to "stand trial" whenever a *Young*-type case—a suit against an official in his official capacity to remedy a violation of federal law—is brought against it. In these suits the state's vital interests are at stake, the state's lawyers are called to the bar of the federal court, and the state itself, through its representatives, is subjected to discovery and other burdens of litigation. Since the state is subjected to this not inconsiderable burden in a *Young* action, it cannot be convincingly argued that the entitlement possessed by the state under the Eleventh Amendment is an entitlement not to stand trial.

capacity. These cases exemplify the fundamental distinction between a suit against an official in his personal—as opposed to his official—capacity. *See, e.g., Scott,* 811 F.2d at 1153 ("As a practical matter, a public official who is a defendant in a suit seeking an injunction is not 'on trial' at all.").

4. A state can, in fact, be haled into state or federal court in a variety of well-recognized situations. For example, the Eleventh Amendment does not bar a suit against a state in that state's own court system. Nor does it bar a suit against a state in a different state court. *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). Congress, pursuant to a valid exercise of power, can abrogate the state's immunity, thus allowing a state to be sued in federal court. *See, e.g., Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

A state can ordinarily be sued in federal court by another state, *e.g., South Dakota v. North Carolina,* 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904), by the United States, *e.g., United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed. 2d 717 (1965), or by a plaintiff seeking injunctive relief in a suit nominally against a state official, *e.g., Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See infra.*

5. It is well settled that a district court's denial of a motion to dismiss on jurisdictional grounds is not a "final" decision under section 1291. *See Catlin v. United States,* 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945). Hence, to the degree the Eleventh Amendment defense is like a jurisdictional bar, it is not an appealable final decision.

## V. CONCLUSION

Our analysis thus far has focused exclusively on the question whether the state's claim of right under the Eleventh Amendment can adequately be vindicated on appeal from a final judgment. This particular leg of the collateral order inquiry is sometimes called the "urgency [of review]" or "irreparable harm [to appellants]" element of the test. *See In re Continental Investment Corp.,* 637 F.2d 1, 5 (1st Cir. 1980) (summarizing the four parts of the test as separability, finality, urgency, and importance). In *Mitchell v. Forsyth,* the Supreme Court's most recent word on collateral orders, it was this element that seemed predominant in the Court's analysis, an emphasis that this circuit has also endorsed. *See Rodriguez v. Banco Central,* 790 F.2d 172, 178 (1st Cir.1986) (citing *In re San Juan Star Co.,* 662 F.2d 108, 112 (1st Cir.1981)). And since a decision that fails *any* of the four traditional elements of the collateral order test is not appealable, *see United States v. Sorren,* 605 F.2d 1211, 1213 (1st Cir.1979), the state defendants' failure to persuade us on the so-called "urgency" issue is dispositive of their claim. It is thus unnecessary for us to subject the district court's decision to further analysis under the collateral order test.

Our decision that we lack jurisdiction here is consistent with the longstanding presumption against interlocutory review. In *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940), Justice Frankfurter commented on this policy:

> Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed.

Mindful of these interests, courts have consistently confined the reach of the collateral order doctrine.

Our assertion of jurisdiction today would not only depart from the case law under the collateral order doctrine, but would add to what we view as an already undesirable trend towards piecemeal review. We believe that issues like this will not only be better decided on a complete record, but that the time and effort expended upon review of a preliminary record will constitute a significant added burden upon litigants and courts.

For these reasons, and, particularly, because the interests underlying the immunity the Eleventh Amendment provides to the states can be adequately vindicated upon an appeal from a final judgment, we hold that the district court's decision here is not a collateral order, and that we have no jurisdiction over this interlocutory appeal.

*Appeal dismissed.*